**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

─────────────────────────────────

SHAH MUSA, NAHID HUSSAIN, CARLOS ENRIQUE
RUBIO, and LUIS ALBERTO FLORES,
*on behalf of themselves,*                                          **Case No.:**
*FLSA Collective Plaintiffs and the Class,*

                                        Plaintiffs,

                        v.                                          **CLASS AND COLLECTIVE**
                                                                   **ACTION COMPLAINT**
MUR II INC.
        d/b/a MUR,
NOVO HOSPITALITY CORP.                                             Jury Trial Demanded
        d/b/a NOVO STEAKHOUSE,
TRU BY MUR INC.,
IGOR FAZYLOV, and
ELANA ARABOV,

                                        Defendants.

─────────────────────────────────

        Plaintiffs SHAH MUSA, NAHID HUSSAIN, CARLOS ENRIQUE RUBIO, and LUIS

ALBERTO FLORES, (herein, "Plaintiffs"), on behalf of themselves and others similarly situated,

by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint

against Defendants MUR II INC. d/b/a MUR,  NOVO HOSPITALITY CORP. d/b/a NOVO

STEAKHOUSE, and TRU BY MUR INC. (the "Corporate Defendants"), IGOR FAZYLOV and

ELANA ARABOV ("Individual Defendants") (each individually, "Defendant" or, collectively,

"Defendants") and state as follows:

## INTRODUCTION

1.     Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to bounced checks, (2) unpaid wages, including overtime, due to an invalid tip credit, (3) unpaid wages, including overtime, due to time shaving, (4) unlawfully retained gratuities, (5) liquidated damages, and (6) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to bounced checks, (2) unpaid wages, including overtime, due to an invalid tip credit, (3) unpaid wages, including overtime, due to timeshaving, (4) unpaid overtime premiums due to misclassification, (5) unlawfully retained gratuities, (6) compensation for late payment of wages, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    Plaintiff SHAH MUSA ("Plaintiff MUSA") is a resident of Queens County, New York.

6.     Plaintiff NAHID HUSSAIN ("Plaintiff HUSSAIN") is a resident of Queens County, New York.

7.    Plaintiff CARLOS ENRIQUE RUBIO ("Plaintiff RUBIO") is a resident of New York County, New York.

8.    Plaintiff LUIS ALBERTO FLORES ("Plaintiff FLORES") is a resident of Nassau County, New York.

9.    Defendants own and operate a modern Mediterranean restaurant  called "NOVO" (the "Restaurant") located at 310 Central Avenue, Lawrence, NY 11559. The Restaurant was previously known as the following names at different points in time:

      a.    Mur - operated by Corporate Defendant MUR II, INC.

      b.    Tru by Mur – operated by Corporate Defendant TRU BY MUR, INC.

      c.    Sugar Rush – operated Sugar Rush Inc.

Although the Restaurant had different names at different points in time, it was actually the same restaurant operating at the same location, as explained in detail below.

10.    Corporate Defendants operate as a single integrated enterprise, under the control of Individual Defendants IGOR FAZYLOV and ELANA ARABOV. Specifically, the Corporate Defendants are engaged in related activities, share common ownership, and have a common business purpose:

      a.    Defendants first operated the restaurant "Sugar Rush" at 310 Central Avenue, Lawrence, NY 11559. At some point, Sugar Rush underwent renovations and changed the restaurant name to "Mur." After some time, Mur underwent renovations to expand its restaurant space to also operate in 312 Central Avenue, Lawrence, NY 11559, the space adjacent to 310 Central Avenue. While Mur was undergoing renovations, Defendants temporarily opened "Tru by Mur" in April 2022 to December 2022 as a replacement restaurant operating in 310 Central Avenue. When renovations finished, Mur reopened and operated in 310-312 Central Avenue until February 2024. At that point, the restaurant underwent

renovations again to expand the restaurant space to include 314 Central Avenue and the restaurant name was changed to "Novo."

b.  Despite undergoing several renovations and name changes, the Restaurant remained under the control of Individual Defendants IGOR FAZYLOV and ELANA ARABOV at all relevant times.

c.  Despite the change in restaurant name, all Corporate Defendants have actually been operating the same restaurant at the same location and providing the same food service and menu items, which is managed by the same team, including Individual Defendants IGOR FAZYLOV and ELANA ARABOV.

d.  Because it is the same Restaurant, the same operations continued, and the same employees were "carried over" even when the restaurant underwent several renovations and name changes.

e.  Throughout their employment, Plaintiffs were managed by the same team, including Individual Defendants IGOR FAZYLOV and ELANA ARABOV, despite the Restaurant going through several name changes during their employment.

f.   Throughout their employment, Plaintiffs received paystubs and paychecks that were issued by the aforementioned corporate entities, including Corporate Defendants. For instance, Plaintiff HUSSAIN received paystubs and paychecks issued by Sugar Rush, Inc., Corporate Defendants MUR II, INC., and NOVO HOSPITALITY CORP. throughout his employment. *See* **Exhibit A,** A Sample of Plaintiff HUSSAIN's Paystubs and Paychecks**.** Plaintiff MUSA also received paystubs and paychecks issued by Corporate Defendants MUR II, INC., and NOVO

HOSPITALITY CORP. throughout his employment. *See* **Exhibit B,** A Sample of Plaintiff MUSA's Paystubs and Paychecks**.**

g.  Regardless of the change in restaurant name, the Restaurant implemented the same payroll policies, methods and have a single, centralized system of labor relations for employees. Plaintiffs were subject to the same wage and hour violations despite the Restaurant going through several name changes during their employment.

h.  In a current and separate wage and hour lawsuit against Sugar Rush, Inc., Corporate Defendants MUR II, INC. and TRU BY MUR, INC., it was admitted in their Answer that:

> Defendants operate an upscale restaurant located at r310 [sic] Central Avenue, Lawrence, NY.  At one point during Plaintiffs' employ, the restaurant changed its name; however, at all times it has been the same restaurant, with the same general menu, and the same management: Igor and Arabov. Moreover, at varying times Plaintiffs would receive paychecks from different entities: Sugar Rush and Mur II.  At all times, on information and belief, Defendants have acted in concert to jointly employ Plaintiffs. (*See Reyes et al v. Tru by Mur, Inc. et al,* Case No. 2:23-cv-02243, ECF No. 38, ¶ 5)

11.  Corporate Defendant MUR II INC d/b/a MUR is a domestic business corporation with a principal place of business and an address for service of process at 310 Central Avenue, Lawrence, NY 11559.

12.  Corporate Defendant NOVO HOSPITALITY CORP. is a domestic business corporation with a principal place of business at 310 Central Avenue, Lawrence, NY 11559 and an address for service of process located at 312 Central Avenue, Lawrence, NY 11559.

13.  Corporate Defendant TRU BY MUR INC. is a domestic business corporation with a principal place of business and an address for service of process at 310 Central Avenue, Lawrence, NY 11559.

5

14.    Individual Defendant IGOR FAZYLOV is an owner and principal of each of the Corporate Defendants. IGOR FAZYLOV exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class.  IGOR FAZYLOV frequently visits the Restaurant. exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurant could complain to IGOR FAZYLOV directly regarding any of the terms of their employment, and would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.  IGOR FAZYLOV exercised functional control over the business and financial operations of the Corporate Defendants. IGOR FAZYLOV had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

15.    Individual Defendant ELANA ARABOV is an owner and principal of each of the Corporate Defendants. ELANA ARABOV exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. ELANA ARABOV frequently visits the Restaurant. exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurant could complain to ELANA ARABOV directly regarding any of the terms of their employment, and would have the authority to effect any changes to the quality and terms of

employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.   ELANA ARABOV exercised functional control over the business and financial operations of the Corporate Defendants. ELANA ARABOV had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

16.   At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

17.   At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

18.   Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all employees (including waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, sous chefs, food preparers, and porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

20.   At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

proper wages, due to bounced checks. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.    Further, with respect to tipped employees ("Tipped FLSA Collective Plaintiffs"), Defendants failed to compensate Plaintiffs HUSSAIN and MUSA ("Tipped Plaintiffs") and Tipped FLSA Collective Plaintiffs all their tips earned, due to unlawful tip retention and an invalid tip pool. Moreover, Defendants were not entitled to take any tip credits under the FLSA because they failed to satisfy all statutory requirements for taking a tip credit. The claims of Tipped Plaintiffs stated herein are essentially the same as those of the other Tipped FLSA Collective Plaintiffs.

22.    Additionally, with respect to hourly employees ("Timeshaved FLSA Collective Plaintiffs"), Defendants failed to compensate Plaintiffs RUBIO, HUSSAIN and MUSA ("Timeshaved Plaintiffs") and Timeshaved FLSA Collective Plaintiffs their proper wages for all hours worked, due to timeshaving. The claims of Timeshaved Plaintiffs stated herein are essentially the same as those of the other Timeshaved FLSA Collective Plaintiffs.

23.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all employees (including waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors,

sous chefs, food preparers, and porters, among others)  employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

25.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes the following subclasses:

      a.  Tipped Subclass which is comprised of all tipped employees employed by Defendants during the relevant statutory period. The Tipped Subclass also number more than forty (40). Plaintiffs HUSSAIN and MUSA are members of the Class and the Tipped Subclass.

      b.  Timeshaved Subclass which is comprised of all employees who were paid on an hourly basis but were not compensated proper wages for all hours worked due to Defendants' timeshaving policy. Timeshaved Subclass also number more than forty (40). Plaintiff HUSSAIN, MUSA and RUBIO are members of the Class and the Timeshaved Subclass.

c.   Misclassified Subclass which is comprised of all employees who were not compensated proper overtime premiums due to being misclassified as exempt employees. Misclassified Subclass also number more than forty (40). Plaintiff FLORES is a member of the Class and the Misclassified Subclass.

27.   Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of (i) unpaid wages due to bounced checks; (ii) compensation for late payment of wages; (iii) failing to provide proper wage statements to employees; and (iv) failing to provide proper wage notices to employees.

28.   With regard to the Tipped Subclass, Defendants are not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Tipped Plaintiffs and Tipped Subclass are owed the prevailing minimum wage, including overtime, due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in continuous non-tipped duties which exceed 20% of the total hours worked each workweek, (iii) claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes, (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to keep track of daily tips earned and maintain records thereof. Moreover, the Tipped Plaintiffs and Tipped Subclass are owed tips that were unlawfully retained Defendants during their employment.

29.   With regard to the Timeshaved Subclass, Defendants failed to compensate Timeshaved Plaintiffs and the Timeshaved Subclass for all their hours worked, due to timeshaving.

30.    With regard to the Misclassified Subclass, Defendants failed to pay Plaintiff FLORES and the Misclassified Subclass for their hours worked over forty (40) at a rate of at least one and a half times their regular rate of pay, due to misclassifying them as exempt employees.

31.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

32.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

33.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

34.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL and applicable state laws;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class Members;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class Members for their work;

d.  Whether Defendants properly notified Plaintiffs and the Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiffs and Class Members the proper compensation for all hours worked under the New York Labor Law;

f.  Whether Defendants operated their business with a policy of failing to pay wages, including overtime, to Plaintiffs and Class members for all hours worked due to bounced checks;

g.  Whether Defendants operated their business with a policy of failing to pay Plaintiff FLORES and Misclassified Subclass  proper overtime premiums for all hours worked in excess of forty (40) in a workweek, due to misclassification;

h.  Whether Defendants operated their business with a policy of failing to pay wages, including overtime, to Timeshaved Plaintiffs and Timeshaved Subclass for all hours worked due to timeshaving;

i.  Whether Defendants operated their business with a policy of failing to pay wages, including overtime, to Tipped Plaintiffs and Tipped Subclass for all hours worked due to an invalid tip credit;

j.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit and that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate;

k.  Whether Defendants claimed tip credit for all hours worked despite having caused tipped employees to engage in continuous non-tipped duties which exceed 20% of the total hours worked each workweek;

l.  Whether Defendants claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes;

m.  Whether Defendants had an improper tip pool that included managers and other employees that did not serve customers;

n.  Whether Defendants themselves unlawfully retained tips earned by Tipped Plaintiffs and Tipped Subclass.

o.  Whether Defendants provided proper wage statements informing Tipped Plaintiffs and Tipped Subclass members of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

p.  Whether Defendants took the proper amount of tip credit allowance from Tipped Plaintiffs and Tipped Subclass members under the New York Labor Law;

q.  Whether Defendants kept daily records of tips earned by Tipped Plaintiffs and the Tipped Subclass members;

r.  Whether Defendants failed to pay Plaintiffs and Class members within seven calendar days after the end of the week in which wages were earned;

s.  Whether Defendants provided proper wage statements to Plaintiffs and Class Members per requirements of the New York Labor Law; and

t.  Whether Defendants provided wage and hour notices, at date of hiring and with each change in pay rate thereafter, to all non-exempt employees, in their native language, per requirements of the NYLL.

## STATEMENT OF FACTS

### *Plaintiff SHAH MUSA*

37.  In or around June 2021, Plaintiff MUSA was hired by Defendants to work as a busboy for Defendants' Restaurant located at 310 Central Avenue, Lawrence, NY 11559. In or around February 2024, Plaintiff MUSA was terminated when Defendants' Restaurant closed for renovation for two (2) months. When the Restaurant reopened, Plaintiff MUSA was never called back.

38.  Plaintiff MUSA was scheduled to work for five (5) days a week throughout his employment. Plaintiff MUSA's scheduled start time was always 4:30 p.m. However, his scheduled end time depended on when the last customer left. Plaintiff MUSA usually ended his shift anytime between 11:00 p.m. to 1:00 a.m. Thus, his total scheduled hours in a workweek ranged anywhere from thirty-two and a half (32.5) to forty-two and a half (42.5) hours.

39.  From the start of his employment to in or around September 2023, Plaintiff MUSA was compensated at an hourly rate of ten dollars per hour ($10/hour) weekly in check. From in or around September 2023 to the end of his employment, Plaintiff SHAH MUSA was compensated at an hourly rate of sixteen dollars per hour ($16/hour) weekly in check. Tipped FLSA Collective Plaintiffs and Tipped Subclass who were compensated on an hourly basis were compensated at similar rates weekly in check.

**_Plaintiff NAHID HUSSAIN_**

40.    On or around May 29, 2023, Plaintiff HUSSAIN was hired by Defendants to work as a busboy for Defendants' Restaurant located at 310 Central Avenue, Lawrence, NY 11559. On or around January 16, 2024, Plaintiff HUSSAIN was terminated when Defendants' Restaurant closed for renovation for two (2) months. When the Restaurant reopened, Plaintiff HUSSAIN was never called back.

41.    Plaintiff HUSSAIN was scheduled to work for five (5) days a week throughout his employment. Plaintiff HUSSAIN's scheduled start time was always 4:30 p.m. However, his scheduled end time depended on when the last customer left. Plaintiff HUSSAIN usually ended his shift anytime between 11:00 p.m. to 1:00 a.m. Thus, his total scheduled hours in a workweek ranged anywhere from thirty-two and a half (32.5) to forty-two and a half (42.5) hours.

42.    From the start of his employment to in or around September 2023, Plaintiff HUSSAIN was compensated at an hourly rate of ten dollars per hour ($10/hour) weekly in check. From in or around September 2023 to the end of his employment, Plaintiff HUSSAIN was compensated at an hourly rate of sixteen dollars per hour ($16/hour) weekly in check. Tipped FLSA Collective Plaintiffs and Tipped Subclass who were compensated on an hourly basis were compensated at similar rates weekly in check.

**_Plaintiff CARLOS ENRIQUE RUBIO_**

43.    On or around June 19, 2023, Plaintiff RUBIO was hired by Defendants to work in the Pastry section for Defendants' Restaurant at 310 Central Avenue, Lawrence, NY 11559. Plaintiff RUBIO worked in the pastry section for three (3) months before he transitioned into another position as a line cook. Plaintiff RUBIO's employment with Defendants was terminated in or around May 2024.

44.    When Plaintiff RUBIO was working in the pastry section, he was scheduled to work five (5) days per week, from 5:00 p.m. to 11:00 p.m., for a total of thirty (30) hours per week. When Plaintiff RUBIO was transitioned to line cook, he was scheduled to work five (5) days per week, from 1:00 p.m. to 11:00 p.m., for a total of fifty (50) hours per week.

45.    When Plaintiff RUBIO was working in the pastry section, he was compensated weekly at an hourly rate of $16.00. When Plaintiff RUBIO was transitioned to line cook, he was compensated weekly at an hourly rate of $20.00 weekly. FLSA Collective Plaintiffs and Class members who were compensated on an hourly basis but were not tipped employees, were compensated at similar rates weekly in check.

### *Plaintiff LUIS ALBERTO FLORES*

46.    In or around August 2020, Plaintiff LUIS ALBERTO FLORES was hired by Defendants to work as a sous chef for Defendants' Restaurant located at 310 Central Avenue, Lawrence, NY 11559. In or around March 2024, Plaintiff FLORES terminated his employment with Defendants due to the latter's wage and hour violations.

47.    Throughout his employment, Plaintiff FLORES was scheduled to work six (6) days per week, Mondays to Thursdays and Saturdays to Sundays, from 1:00 p.m. to 10:00 p.m., for a total of fifty-four (54) hours each week. FLSA Collective Plaintiffs and Misclassified Subclass had similar schedules.

48.    Throughout his employment, Plaintiff FLORES was compensated at a fixed salary rate, regardless of the actual amount of hours worked in a week. From the start of his employment until in or about January 2023, Plaintiff FLORES was compensated at a fixed salary rate of one-thousand dollars ($1,000.00) per week. From in or about January 2023 until the end of his employment, Plaintiff FLORES was compensated a fixed salary rate of one-thousand and five-

hundred dollars ($1,500.00) per week. Similarly, FLSA Collective Plaintiffs and Misclassified Subclass had similar salary rates.

***Tipped Plaintiffs' and Tipped Subclass' Claims***

49.    From the start of their employment to in or about September 2023, Plaintiffs MUSA and HUSSAIN were paid below the minimum wage at an invalid "tip credit" minimum wage rate. Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or twenty (20%) of the total hours worked each shift; (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding thirty (30) minutes; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tipped FLSA Collective Plaintiffs and Tipped Subclass members.

50.    Tipped Plaintiffs did not receive any tip credit notice. Tipped Plaintiffs were told that they would be paid $10.00 because they were earning tips, but they were never informed: (1) of the amount of tip credit that was taken, (2) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee, (3) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee, (4) that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips, (5) that the tip credit will not apply to any tipped employee unless the employee has been informed of the foregoing, and (6) that extra pay is required if tips were not sufficient to bring employee to the

basic minimum hourly rate. Similarly, Tipped FLSA Collective Plaintiffs and Tipped Subclass members did not receive any tip credit notice.

51.   Tipped Plaintiffs were required to engage in over two (2) hours or more than twenty percent (20%) of their working time each shift in non-tipped related activities, including but not limited to, unloading all deliveries, cleaning bathrooms, sweeping and mopping, cleaning the windows, and going to Restaurant Depot to purchase supplies and ingredients (hereinafter the "non-tipped duties"). Similarly, Tipped FLSA Collective Plaintiffs and Tipped Subclass members performed the same non-tipped duties.

52.   Tipped Plaintiffs were scheduled to work from 4:30 p.m. until the last customer left which is anytime between 11:00 p.m. to 1:00 a.m. However, the Restaurant service time is generally only from 5:00 p.m. to 10:00 p.m. *See* **Exhibit C.** Thus, at the beginning of their shifts, Tipped Plaintiffs were forced to perform the aforementioned non-tipped duties for approximately one and a half (1.5) hours because the Restaurant would only start to get busy at around 6:00 p.m. Moreover, Tipped Plaintiffs would resume their non-tipped duties as soon as the Restaurant's service time ended, as only a few customers were left during that time. It would take them an average of one and a half (1.5) hours to perform non-tipped duties by the end of their shift. In total, Tipped Plaintiffs would spend approximately three (3) hours or at least 35% (3 hours out of 8.5 hours) of their shift doing non-tipped duties. Similarly, Similarly, Tipped FLSA Collective Plaintiffs and Tipped Subclass members performed non-tipped duties for more than two (2) hours or 20% of their entire shifts.

53.   Despite Defendants requiring Tipped Plaintiffs, Tipped FLSA Collective Plaintiffs and Tipped Subclass members to engage in non-tipped activities in excess of two (2) hours or twenty

percent (20%) of the total hours worked each shift, Defendants improperly claimed tip credit for all their hours worked.

54.    Additionally, Defendants improperly claimed a tip credit for all continuous periods of time of Plaintiff's non-tipped, directly supporting work exceeding thirty (30) minutes. Similarly, Defendants improperly claimed a tip credit for all continuous periods of time of the Tipped FLSA Collective Plaintiffs and Tipped Subclass members' non-tipped, directly supporting work exceeding thirty (30) minutes.

55.    Furthermore, Tipped Plaintiffs' wage statements do not reflect the amount of tip credit claimed by Defendants. *See* **Exhibit A and B.** Similarly, Tipped FLSA Collective Plaintiffs' and Tipped Subclass members' wage statements did not reflect the tip credit taken by Defendants.

56.    Moreover, from the start of Tipped Plaintiffs' employment to in or around September 2023, Defendants implemented an invalid tip pool. Defendants permitted managers Soso [Last Name Unknown, or "LNU"] and Mohammed Ali to participate in the tip pool and take 12% of the total tips earned by tipped employees despite the fact that these managers did not customarily interact with customers. All Tipped FLSA Collective Plaintiffs' and Tipped Subclass members were subject to this invalid tip pool.

57.    Starting September 2023, Defendants changed their policy to compensate Tipped Plaintiffs, Tipped FLSA Collective Plaintiffs and Tipped Subclass members at or over the prevailing minimum wage, instead of the tip credit minimum wage. However, the tradeoff was that Defendants retained all of the tips earned by Tipped Plaintiffs, Tipped FLSA Collective Plaintiffs and Tipped Subclass members in violation of the FLSA and the NYLL.

***Timeshaved Plaintiffs' and Timeshaved Subclass' Claims***

58. Throughout Plaintiffs MUSA, HUSSAIN and RUBIO's employment, Defendants failed to pay them for all hours worked due to their timeshaving policy.

59. With regard to Plaintiffs MUSA and HUSSAIN, their scheduled hours would reach up to forty-two and half (42.5) hours in a workweek. However, when they were about to reach forty (40) hours in a workweek, Defendants required them to clock out but continue working. Hence, they were not paid any overtime wages for their hours worked over forty (40). This would happen about two (2) to three (3) times per month.

60. With regard to Plaintiff RUBIO, Defendants required him to handwrite his hours instead of clocking in and out for the first two (2) months of his employment. Defendants would pay him five (5) or six (6) hours less than the hours Plaintiff RUBIO recorded.

61. Moreover, whenever the clock machine was not working, all hourly employees were required to record their time manually through handwriting. Whenever this happened, Timeshaved Plaintiffs, Timeshaved FLSA Collective Plaintiffs and Timeshaved Subclass were paid about five (5) hours less than what they actually recorded. This would occur approximately every two (2) months.

***Plaintiff FLORES' and Misclassified Subclass' Claims***

62. From the start of his employment until in or about January 2023, Plaintiff FLORES was compensated at a fixed salary rate of one-thousand dollars ($1,000.00) per week without any premiums for his overtime hours. However, this amount is below the salary threshold under the NYLL to be exempt from overtime (i.e., 2021 - $1,050.00; 2022 & 2023 - $1,125.00). Despite his salary being below the NYLL threshold, Plaintiff RUBIO was classified as an exempt-from-overtime employee and was not paid any overtime premiums for his hours in excess forty (40) in

a workweek during the relevant period. Similarly, the Misclassified Subclass was misclassified as exempt from overtime despite being paid below the salary threshold under the NYLL. As a result, Plaintiff FLORES and the Misclassified Subclass were not paid any overtime premiums due to misclassification.

63.   There was never any agreement that Plaintiff FLORES' fixed weekly salary was intended to cover the overtime hours in excess of 40 that he worked. Similarly, the Misclassified Subclass never had any agreement that their fixed weekly salary was intended to cover the overtime hours in excess of 40 that they worked.

### *Plaintiffs' and Class Members' Claims*

64.   Plaintiffs were scheduled to receive their compensation on a weekly basis based on Defendants' policy. However, Plaintiffs would always receive their pay one (1) to two (2) weeks late in violation of NYLL § 191, which requires that manual workers be paid weekly. Given the nature of their positions and the industry that they were in, Plaintiffs were manual workers under the NYLL, as they spent more than 25% of their shift performing physical labor. Despite being manual workers, Plaintiffs did not receive their compensation weekly as required by the NYLL. Similarly, Class Members always received their paychecks one (1) to two (2) weeks late despite the NYLL requiring manual workers to be paid weekly.

65.   Moreover, Plaintiffs are owed wages as they have received multiple bounced checks throughout their employment and were never reimbursed for it. Plaintiffs MUSA and HUSSAIN received at least two (2) bounced checks. *See* **Exhibit B.** Plaintiff RUBIO received at least six (6) bounced checks. Plaintiff FLORES received at least seven (7) bounced checks. *See* **Exhibit D,** A Sample of Plaintiff FLORES' Bounced Checks**.** Plaintiffs never received any reimbursement for

these bounced checks. Similarly, FLSA Collective Plaintiffs and Class Members are owed unpaid wages due to bounced checks.

66. Plaintiffs and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

67. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class members at the beginning of their employment with Defendants.

68. Defendants further violated the WTPA by failing to provide Plaintiffs and Class Members with accurate wage statements, which the WTPA requires. *See Rojas v. Splendor Landscape Designs*, Ltd., 268 F. Supp. 3d 405, 413 (E.D.N.Y. 2017) ("Here, it is undisputed that the wage statements furnished to Plaintiffs were inaccurate in that they did not reflect all of the hours worked by Plaintiffs. Nor did they reflect Plaintiffs' *actual* pay rates.") (emphasis added); *Brito v. Lucky Seven Rest. & Bar, LLC*, 2021 U.S. Dist. LEXIS 55822, at *36 (S.D.N.Y. Mar. 24, 2021) ("And of course, the wage statements are inaccurate more generally in falsely portraying Brito's pay as the product of an hourly, rather than a weekly, wage rate."). The wage statements furnished to Plaintiffs were inaccurate because the wages stated therein did not include proper rate at which Plaintiffs should be paid and the actual hours that Plaintiffs worked. Instead, they reflected the timeshaved hours of Plaintiffs. In case of tipped Plaintiffs, their paystubs reflected the tip credit minimum wage which Defendants were not entitled to claim. In case of Plaintiff FLORES, his paystubs did not reflect his overtime rate and overtime hours.

69. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

70. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

71. Had the wage statements Defendants provided to Plaintiffs and Class Members accurately listed the total wages that Plaintiffs and Class Members are entitled to, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond to the with the former or (b) forthrightly acknowledge, by way of the wage statement, that the wages

received did *not* correspond to the wages that Plaintiffs and Class Members were entitled to. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

72.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

73.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

74.    The direct effect of understating the wages earned on wage statements, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

75.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

76. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

77. Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the wages earned been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages paid for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on

behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

78. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

79. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

80. Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may

receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

81.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

82.    Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

83.    Defendants knowingly and willfully operated their business with a policy of not paying the proper payrates for all hours worked to Tipped Plaintiffs, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members, due to an invalid tip credit in violation of the FLSA and the NYLL.

84.    Defendants knowingly and willfully operated their business with a policy of not paying all tips earned to Tipped Plaintiffs, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members, due to an unlawful tip retention in violation of the FLSA and the NYLL.

85.    Defendants knowingly and willfully operated their business with a policy of not paying Timeshaved Plaintiffs, Timeshaved FLSA Collective Plaintiffs and Timeshaved Subclass members for all hours worked, due to timeshaving in violation of the FLSA and the NYLL.

86.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff FLORES and Misclassified Subclass overtime premiums for their hours worked in excess of forty (40), due to misclassification in violation of the NYLL.

87.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and Class members their proper wages within seven days after the end of the week in which the wages are earned, in violation of the NYLL.

88.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs, and Class members any wages, due to bounced checks in violation of the FLSA and the NYLL.

89.    Defendants knowingly and willfully operated their business without providing any wage notices in violation of the NYLL.

90.    Defendants knowingly and willfully operated their business without providing proper or accurate wage statements in violation of the NYLL.

91.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

**ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS**

92.    Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

93.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

94.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

95.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

96.    At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Tipped Plaintiffs and Tipped FLSA Collective Plaintiffs due to invalid tip credit.

97.    At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay all tips earned to, to Tipped Plaintiffs and Tipped FLSA Collective Plaintiffs due to unlawful tip retention.

98.    At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Timeshaved Plaintiffs and Timeshaved FLSA Collective Plaintiffs due to timeshaving.

99. At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Plaintiffs and FLSA Collective Plaintiffs due to bounced checks.

100. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

101. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

102. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

103. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

104. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, and unlawfully retained tips plus an equal amount as liquidated damages.

105. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

**ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS**

106.   Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

107.   At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

108.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Tipped Plaintiffs and Tipped Subclass members due to invalid tip credit.

109.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay all tips earned to Tipped Plaintiffs and Tipped Subclass members due to unlawful tip retention.

110.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Timeshaved Plaintiffs and Timeshaved Subclass members, due to timeshaving.

111.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper overtime premiums to Plaintiff FLORES and Misclassified Subclass members, due to misclassification.

112.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Plaintiffs and Class members due to bounced checks.

113.   At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay proper wages, including overtime, to Plaintiffs and FLSA Collective Plaintiffs within seven days after the end of the week in which the wages are earned, in violation of the NYLL.

114.   Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

115.   Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

116.   Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

117.   Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, unpaid wages, including overtime, unlawfully retained gratuities, compensation for late payment of wages, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due to bounced checks under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime, due to time shaving under the FLSA and the NYLL;

e.  An award of unpaid overtime premiums due to misclassification under the NYLL;

f.  An award of unpaid wages, including overtime, due to an invalid tip credit due under the FLSA and the NYLL;

g.  An award of unlawfully retained gratuities under the FLSA and the NYLL;

h.  An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime, pursuant to 29 U.S.C. § 216;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime, pursuant to the New York Labor Law;

k.  An award of statutory penalties as a result of Defendants' failure to comply NYLL wage notice and wage statement requirements;

l.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.  Designation of Plaintiffs as Representatives of FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiffs as Representative of the Class; and

p.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: October 2, 2024

<div style="margin-left: 40%">

Respectfully submitted,

By:    */s/ C.K. Lee*
C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

</div>